# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

SANDRA K. O'MARY,                     )
                                      )
           Plaintiff,                 )
                                      )
v.                                    )        No.:   3:13-CV-458-TAV-CCS
                                      )
CAROLYN W. COLVIN,                    )
Acting Commissioner of Social Security, )
                                      )
           Defendant.                 )

## <u>MEMORANDUM AND ORDER</u>

This case is before Court on Plaintiff's Motion for Judgment on the Administrative Record and Memorandum in Support [Docs. 17, 18] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 20, 21]. Plaintiff Sandra K. O'Mary seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income ("SSI") on June 7, 2010, alleging disability since January 19, 2010, due to subluxation of the spine, kyphosis and hyperlordosis of the cervical spine, shortness of breath, anxiety, and headaches, fibromyalgia, and mild osteoarthritis. Her application was denied initially and upon reconsideration. Plaintiff then requested a hearing, which was held before ALJ Joan Lawrence in Knoxville, Tennessee, on November 8, 2011. At the hearing, plaintiff

amended her onset date to August 13, 2010. Plaintiff was present and testified. The ALJ

issued an unfavorable decision on February 3, 2012, finding plaintiff was not disabled.

The Appeals Council denied plaintiff's request for review of that decision; thus, the

decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks

judicial review of the Commissioner's decision.

## I.    ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since August 13, 2010, the amended alleged onset date. (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).
>
> 3. The claimant has the following severe impairments: hypertension, osteoarthritis, headaches (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that the claimant can only occasionally climb ladders, ropes, and scaffolds.
>
> 6. The claimant is capable of performing past relevant work as a laborer. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

2

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 13, 2010, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 15–18].

## II.    DISABILITY ELIGIBILITY

This case involves an application for disability insurance benefits as well as SSI benefits.  An individual qualifies for disability insurance benefits if he or she: (1) is insured for disability insurance benefits; (2) has not attained retirement age; (3) has filed an application for disability insurance benefits; and (4) is under a disability.  42 U.S.C. § 423(a)(1).  To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability.  *See* 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual shall be determined to be under a disability only if his or her physical or mental impairment or impairments are of such severity that he or she is not only unable to do previous work but cannot, considering the individual's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which

3

the individual lives, or whether a specific job vacancy exists for the individual, or whether the individual would be hired if he or she applied for work. *Id.* §§ 423(d)(2)(B), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The plaintiff bears the burden of proof at the first four steps. *Id.* The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the plaintiff could

perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of

5

court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).  Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Walters*, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses."  *Wilson*, 378 F.3d at 546–47.  Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence and the error did not deprive the claimant of an important benefit or safeguard.  *See id.* at 547.

On review, Plaintiff bears the burden of proving entitlement to benefits.  *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971)).

6

## IV.    POSITIONS OF THE PARTIES

Plaintiff argues that that the ALJ erred in five respects.  First, plaintiff maintains that the ALJ failed to properly consider all of her impairments and further failed to provide sufficient reasons for not finding such impairments to be severe [Doc. 18 at 7]. Second, plaintiff argues that the ALJ erroneously gave "very little weight" to the opinion of a consultative examiner [*Id.* at 11].   Third, plaintiff contends that her residual functional capacity ("RFC") is not consistent with the medical evidence of record [*Id.* at 10].   Fourth, plaintiff asserts that the ALJ should have obtained testimony from a vocational expert ("VE") during the hearing in order to determine the requirements of plaintiff's past relevant work [*Id.* at 5].  Lastly, plaintiff alleges that the ALJ did not properly evaluate her credibility pursuant to Social Security Ruling 96-7p [*Id.* at 8].

The Commissioner contends that the ALJ did not err in her consideration of plaintiff's impairments [Doc. 21 at 6].   In addition, the Commissioner argues that substantial evidence supports the ALJ's decision to assign little weight to the consultative examiner's opinion [*Id.* at 10].   The Commissioner further maintains that substantial evidence supports the ALJ's RFC finding [*Id.* at 9].  The Commissioner also argues that the ALJ properly relied on the "Dictionary of Occupational Titles" (the "DOT"), rather than VE testimony, to determine that plaintiff was capable of performing her past relevant work [*Id.* at 4].   Finally, the Commissioner asserts that the ALJ properly evaluated plaintiff's credibility consistent with Social Security Ruling 96-7p [*Id.* at 7].

7

Plaintiff filed a reply asserting that contrary to the Commissioner's representation, the DOT's description of plaintiff's past relevant job does not indicate how much climbing is required to perform the job, which further necessitates the need for VE testimony [Doc. 22 at 2].

The Commissioner subsequently filed a reply as well, arguing that the DOT's description of plaintiff's past relevant work does in fact include the requirement of at least occasional climbing and attached a physical copy of the specific DOT description for the Court's review [Docs. 23 at 1, 23-1].

## V.     ANALYSIS

The Court will address plaintiff's allegations of error in turn.

### A.     Severe Impairments

Plaintiff argues that the ALJ ignored certain severe impairments that are documented in the record [Doc. 18 at 7]. More specifically, plaintiff alleges that the ALJ ignored the "debilitating effects" of her severe diagnosis of fibromyalgia, migraine headaches, gastritis, cervical and cytology spinal conditions, anxiety disorder, and osteomalacia [*Id.* at 7–8].

The Commissioner argues that the record merely documents a diagnosis or self-reported symptoms regarding the above conditions, neither of which establishes that the conditions are severe impairments [Doc. 21 at 6]. Even if these conditions were found to be severe, the Commissioner submits that plaintiff has failed to show that the ALJ did not consider them [*Id.*]. In this regard, the Commissioner maintains that the ALJ is not

8

required to identify all of plaintiff's severe impairments, nor is she required to discuss all the evidence in her decision [*Id.* at 6–7].

As mentioned above, at step two of the sequential evaluation process, "the ALJ must find that the claimant has a severe impairment or impairments" to be found disabled. *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88 (6th Cir. 1985); *see* 20 C.F.R. § 404.1520(a)(4)(ii). To be severe, an impairment or combination of impairments must "significantly limit[] your physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(c). Step two has been described as "a *de minimis* hurdle" in that an impairment will be considered nonsevere "only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Brown*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Farris*, 773 F.2d at 90). "[O]nce any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps." *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)).

The Court finds no merit in plaintiff's argument for several reasons. First, plaintiff argues that the ALJ ignored her diagnosis of osteoarthritis and migraine headaches, but the ALJ specifically found these two conditions qualified as severe impairments under 20 C.F.R. 404.1520(c) [Tr. 15, Finding 2].

9

Second, plaintiff has failed to demonstrate how the remaining impairments qualify as severe. Plaintiff claims that she suffers from "debilitating effects" from fibromyalgia according to her primary care physician, Fred Merkel, M.D. Dr. Merkel's treatment notes, however, do not substantiate such allegations. Rather, on March 11, 2011, Dr. Merkel noted that plaintiff was tender in her shoulders at most of the fibromyalgia points, noting "probable myalgia," and placed plaintiff on Vitamin D and other pain management [Tr. 294]. Our appellate court has explained, however, that "a *diagnosis* of fibromyalgia does not automatically entitle [a plaintiff] to disability benefits." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008). The Court has not found, nor has plaintiff cited to, any treatment records that demonstrate the severity or effect of the condition, and certainly not to the extent that plaintiff alleges.

Similarly, Dr. Merkel's treatment notes do not provide any specific information regarding gastritis other than his notation of "gastritis probably" [Tr. 285]. In fact, plaintiff does not even set forth any argument in support of her assertion that her gastritis is a severe impairment. Without any evidence offered by plaintiff regarding the limiting effects of this condition, the Court finds there are none. *See Higgs*, 880 F.2d at 863 (holding a diagnosis alone "says nothing about the severity of the condition").

Plaintiff's allegation regarding anxiety suffers from the same flaws. On February 14, 2011, plaintiff presented to Cherokee Health Systems for a behavior services intake [Tr. 307]. Plaintiff appeared somewhat confused as to why she was being seen and stated, "They made me this appointment because I told them I was trying to get my

10

Social Security" [*Id.*]. Plaintiff reported that she worries a lot, will cry if other people hurt her feelings, and has a history of relationship problems with her father [*Id.*]. Plaintiff was diagnosed with anxiety disorder, not otherwise specified, and a six-month plan was put into place with the goal of reducing anxiety symptoms by fifty percent [*Id.*]. By July 15, 2011, six months later, plaintiff reported, "everything is going pretty well" [Tr. 299]. Treatment notes related that "[g]iven the fact that her personal stress level seems to have lifted in addition to her limited ability to engage in insight oriented therapy[,] the [patient] has reached the maximum benefit of therapy for now" [*Id.*]. Treatment goals were noted as "accomplished" [*Id.*]. Two months later, plaintiff was seen again, at which time she reported she was having little to no anxiety [Tr. 297]. Her mood was reported as mostly stable with a Global Assessment of Functioning score of 65[1] [*Id.*]. As a result, plaintiff was discharged from further treatment [Tr. 298]. Thus, the Court finds that the medical evidence fails to demonstrate any "debilitating effects" caused from an anxiety diagnosis.

Finally, the Court is not persuaded that plaintiff's history of pain in her cervical spine creates such limiting effects as alleged. Plaintiff claims that the medical evidence demonstrates that she suffers from chronic neck pain as evidenced by treating records from Brown Chiropractic, dated November 2, 2010, and May 18, 2011, in which acute

---

[1] A score ranging between 61 and 70 indicates some mild symptoms or some difficulty in social, occupational, or school function, but generally functioning pretty well, has some meaningful interpersonal relationships. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34, 4th ed. (revised) 2000.

11

cervical pain radiating to both shoulders was noted [Tr. 229, 268].  In addition, x-rays taken on November 2, 2010, reveal subluxation of the spine at C4, C5, and C6 and kyphosis/lordosis of the cervical spine [Tr. 230].  Plaintiff submits that these x-rays substantiate her claim of a pinched nerve in her neck and contradicts the ALJ's finding that "there is no diagnostics testing in the record to support" plaintiff's allegation of a pinched nerve [Tr. 17].  The Court finds the November 2 x-rays do not constitute a finding of a pinched nerve.  Treatment records, including those from Brown Chiropractic as well as Dr. Merkel, do not provide any documentation or opinion regarding a pinched nerve.  The Court declines plaintiff's invitation to assume, without any support, that plaintiff's x-rays showing subluxation is the equivalent of a pinched nerve.  While chiropractic treatment notes documented plaintiff's complaints of pain [Tr. 229, 268], and Dr. Merkel likewise noted complaints of pain in plaintiff's neck and shoulder area [Tr. 282–85, 294], there is simply no indication, evidence, or opinion that plaintiff suffered from a pinched nerve.  Moreover, there is no evidence documenting the severity or limiting effects regarding plaintiff's spine that would substantiate plaintiff's claims that she experiences "debilitating effects" due to a "history of cervical/cytology."  Thus, substantial evidence supports the ALJ's finding that the record is void of diagnostic testing to the support plaintiff's allegation of a pinched nerve.

The Court notes that even if plaintiff could successfully argue that one of her contested impairments is severe, "the specific severe impairment noted by the ALJ in his step two finding is irrelevant." *Hastie v. Colvin*, No. 3:13-CV-511-TAV-HBG, 2014 WL

12

2208942, at *3 (E.D. Tenn. May 28, 2014). The Court of Appeals for the Sixth Circuit has explained that when an ALJ finds some impairments to be severe and continues the sequential evaluation process, as is the case here, it is "legally irrelevant" that other impairments are determined to be nonsevere. *See McGlothin*, 299 F. App'x at 522; *see also Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Therefore, the Court finds that the ALJ did not commit reversible error at step two of the sequential evaluation for this reason as well.

Accordingly, plaintiff's allegation of error in this regard is not well taken.

### B.     Robert A. Blaine, M.D.

Plaintiff contends that the ALJ erred by assigning "very little weight" to the opinion of Dr. Blaine who performed a consultative examination [Doc. 18 at 11]. Plaintiff argues that Dr. Blaine's opinion is consistent with a finding of sedentary level work [*Id.*]. As a result, given plaintiff's age, education, and her contention that she has unskilled work experience that is not transferable, plaintiff argues that Section 201.12 of the Medical-Vocational Guidelines (the "Grid") should have been applied, which would have directed a finding of disabled [*Id.*].

The Commissioner argues that plaintiff again fails to cite to any evidence in the record to support her assertion [Doc. 21 at 10]. Nonetheless, the Commissioner maintains that substantial evidence supports the ALJ's assignment of little weight because "Dr. Blaine was a one-time examiner whose opinion was inconsistent with his own examination findings and not supported by diagnostic evidence in the record" [*Id.* at

13

11]. Moreover, the Commissioner argues that plaintiff's Grid argument lacks merit for three reasons: (1) the ALJ properly gave little weight to Dr. Blaine's opinion; (2) plaintiff has not shown that the opinion is due substantial weight, particularly in light of the whole record; and (3) the opinion shows that plaintiff has maximum exertional capabilities greater than sedentary work, and thus, the light Grid rule would actually apply, which in turn would not direct a finding of disabled [*Id.* at 11–12].

On August 13, 2010, plaintiff presented for a consultative examination with Dr. Blaine [Tr. 191–93]. Plaintiff reported that per an x-ray taken by her chiropractor, she had a pinched nerve in her neck [Tr. 191]. Plaintiff explained that the pinched nerve caused pain in her neck that ran down to both shoulders and hands, in turn making it difficult to open jars or bottles, particularly with her left hand, and that she also experienced a pulling sensation with range of motion of her head [Tr. 191]. Plaintiff further reported a history of headaches, which she claimed could last several days at a time [*Id.*].

Upon examination, plaintiff demonstrated that she had limited range of motion in her cervical and thoracolumbar spine, shoulders, and left knee [Tr. 192]. She experienced full range of motion in her elbows, writs, ankles, and right knee [*Id.*]. In addition, plaintiff was negative for straight leg raises and had normal grip and muscle strength as well as normal gait and station [Tr. 193]. Moreover, she performed a heel walk, toe walk, tandem walk, one-leg stand, and squat in a normal manner [*Id.*]. Based upon his examination, Dr. Blaine diagnosed plaintiff with neck pain secondary to a

pinched nerve [*Id.*].   In conclusion, Dr. Blaine opined that plaintiff had the following limitations: she could stand or walk for five or six hours and sit for eight hours in an eight-hour day; she could lift and carry five pounds frequently and fifteen pounds infrequently; and she could handle her own affairs if approved for disability [*Id.*].

In the disability determination, after summarizing Dr. Blaine's examination and findings, the ALJ provided the following discussion of Dr. Blaine's opinion:

> The undersigned has notes that Dr. Blaine only examined the claimant on one occasion.   Furthermore, the undersigned finds that Dr. Blaine's opinion is overly restrictive based on the results of his examination and based on the fact that there are no diagnostic tests in the record demonstrating that the claimant has a pinched nerve in her cervical spine.   Thus, the undersigned gives this opinion very little weight.

[Tr. 17].

Under the Social Security Act and its implementing regulations, the opinion of an examining source is generally given more weight than the opinion of a source who has not examined the claimant.   20 C.F.R. § 404.1527(c)(1).   The weight assigned to an examining source, however, will depend on the supportability of the opinion, consistency of the opinion with other evidence in the record, specialization of the examining source, and other factors that may support or undermine the opinion.   *Id.* § 404.1527(c)(3)–(6). "The better explanation a source provides for an opinion," and the more relevant evidence a source gives to support the opinion, "particularly medical signs and laboratory findings," the more weight the opinion will be given.   *Id.* § 404.1527(c)(3).   In addition, "the more consistent an opinion is with the record as a whole, the more weight" the

opinion will be entitled to. *Id.* § 404.1527(c)(4). Nonetheless, the ultimate decision of disability rests with the ALJ. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

In this case, the ALJ explained in her decision why Dr. Blaine's findings were only afforded little weight. First, as a one-time examiner, Dr. Blaine's opinion was not entitled to any "special degree of deference." *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *see also Podewils v. Colvin*, No. 3:12-CV-235, 2013 WL 4857742, at *6 (E.D. Tenn. Sept. 11, 2013) ("Unlike treating sources, an opinion from a one-time examiner does not receive special deference or weight."). Second, the ALJ considered the supportability of the opinion and found the record was void of any diagnostic testing that would support plaintiff's allegation of a pinched nerve. As already explained above, the Court has likewise found no objective evidence of such a condition. While the November 2 x-rays relied on by plaintiff do not in fact reveal a pinched nerve, the Court notes that those x-rays were taken after Dr. Blaine rendered his opinion and therefore, his diagnosis of a pinched nerved could have only been based upon plaintiff's subjective allegations and/or her limited range of motion in her spine. In addition, the ALJ explained that Dr. Blaine's findings were too restrictive considering plaintiff's ability to perform all functional tests throughout the exam without difficulty. Thus, the Court finds that the ALJ properly weighed the applicable statutory factors and explained, with good reasons, the basis for affording little weight to the opinion.

16

The Court further notes that plaintiff fails to demonstrate why Dr. Blaine's opinion was improperly weighed. The only argument plaintiff offers is that her "testimony is supported by the treatment records and her RFC finding should have been less than sedentary" [Doc. 18 at 11]. Plaintiff offers no explanation, evidence, or other support for this assertion. While plaintiff clearly disagreed with the assignment of weight given to Dr. Blaine's opinion, that basis alone does not demonstrate how the ALJ might have erred in her treatment of the opinion. Therefore, the Court finds the ALJ did not commit reversible error.

In conclusion, the Court finds that plaintiff's allegation that the ALJ erred by not affording more weight to Dr. Blaine's opinion is not well taken. Accordingly, the Court need not address plaintiff's Grid argument.

### C. RFC Determination

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence because the finding is not consistent with the medical evidence of record [Doc. 18 at 10]. More specifically, plaintiff contends that the ALJ "cherry picked" the record and thus, considered only a limited part of the evidence [*Id.* at 10–11].

The Commissioner argues that plaintiff fails to cite to any evidence to support her assertion, and has therefore waived the issue [Doc. 21 at 9]. Even considering the merits of the issue, the Commissioner maintains that ALJ provided specific reasons, supported by substantial evidence, for finding plaintiff capable of performing medium level work with several exceptions [*Id.* at 9–10].

17

The Court finds plaintiff's contention without merit. Plaintiff sets forth a blanket, conclusory assertion that the ALJ's RFC finding is not supported because she only considered a limited part of the evidence. Plaintiff, however, does not fully develop her argument and fails to cite any evidence that the ALJ purportedly failed to consider and further fails to explain how such evidence contradicts the ALJ's finding or could potentially lead to a different conclusion than the one reached. Because plaintiff's argument is undeveloped, the Court is unable to engage in any meaningful review of the alleged error. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (holding that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones") (quoting with approval *Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)). Moreover, our appellate court has repeatedly held that an ALJ need not comment on all the evidence for his or her decision to stand. *See Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. Sept. 30, 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion."); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (quoting *Loral Defense Systems-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999))).

18

The Court has nonetheless thoroughly reviewed the record on its own accord and finds no support in plaintiff's contention. As discussed by the ALJ, the record is void of any diagnostic testing supporting an allegation of a pinched nerve, plaintiff was able to perform a variety of functional tests during her consultative examination without difficulty [Tr. 193], and her migraine headaches improved with medication [Tr. 280, 285]. In addition, the only other acceptable medical source opinion of record, which was provided by a nonexamining, nontreating state agency physician, opined that plaintiff was capable of performing medium work [*Compare* Tr. 202-10 *with* 20 C.F.R. 404.1567(c)]. The ALJ found that "some weight" was due to the state agency's opinion, a finding unchallenged by plaintiff. Furthermore, the Court agrees with the Commissioner that the ALJ's finding need not be supported by all the evidence, only substantial evidence. *See Blakley*, 581 F.3d at 406 (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant (quotations omitted)). Based upon the foregoing evidence, as well as plaintiff's failure to cite any contradictory evidence, the Court finds that the ALJ's RFC finding is supported by substantial evidence.

Therefore, the Court is not persuaded by plaintiff's argument.

## D. Failure to Call a VE

Plaintiff next argues that the ALJ erred by not acquiring VE testimony during the hearing [Doc. 18 at 5]. Specifically, plaintiff argues that the ALJ's finding that she has past relevant work as a store laborer was error because testimony from an VE was needed in order to determine the work requirements of the position [*Id.* at 6].

The Commissioner asserts that the ALJ properly relied on the DOT's definition of a store laborer for determining the requirements of the job, and therefore, VE testimony was neither required nor needed [Doc. 21 at 4].

In the disability determination, the ALJ determined that plaintiff's past job as a laborer qualified as past relevant work [Tr. 18]. The ALJ specifically relied on section 922.687-058 of the DOT, which describes the work of a store laborer as medium exertion, unskilled work [*Id.*]. Given plaintiff's RFC, the ALJ found that plaintiff could performed her past work as she performed it or as generally performed in the national economy [*Id.*].

The Court agrees with the Commissioner in that the ALJ was not required to obtain VE testimony in this case. Our appellate court has made clear that an ALJ is "not required to solicit testimony from a VE in reaching his conclusion" that a claimant is capable of performing past relevant work. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010); *see* 20 C.F.R. § 404.1560(b)(2) ("We *may* use the services of vocational experts . . . to help us determine whether you can do your past relevant work[.]" (emphasis added)); *see also Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x. 425,

429 (6th Cir. 2007) ("The regulations *permit* an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work, given his RFC." (emphasis added)).[2]

Finding that the ALJ's failure to acquire VE testimony was not error, the inquiry is not over. While plaintiff does not specifically raise any other challenge to the ALJ's finding regarding past relevant work, Plaintiff's reply challenges the Commissioner's assertion that the DOT's description of a store laborer requires only occasional climbing [Doc. 22 at 2]. Plaintiff maintains that the DOT's description does not address how much climbing is required and further asserts that she has indicated she performed significant climbing at her past job, and thus, the ALJ erred by failing to properly consider her subjective description of the job [*Id.*]. Accordingly, the Court will consider whether the ALJ properly determined that plaintiff had past relevant work.

"A claimant bears the burden of proving she cannot perform her past relevant work either as she performed the job or as the job is generally performed in the national

---

[2] Plaintiff cites *Young v. Secretary of Health & Human Services*, No. 91-3886, 1992 WL 146595, at *1 (6th Cir. June 23, 1992) for the proposition that VE testimony was essential in this case in order for the ALJ to properly determine the actual job requirements of plaintiff's past work. [Doc. 18 at 6]. *Young*, however, is distinguishable from this case in that the claimant in *Young* experienced "significant nonexertional limitations" and therefore, "VE testimony is needed to clarify the job duties and requirements of this work as actually performed by Young and as required by employers throughout the national economy." *Id.* By contrast here, plaintiff does not experience any nonexertional limitations that would otherwise require additional vocational information, thus making the ALJ's reliance on the DOT inappropriate. *See Patterson v. Comm'r of Soc. Sec.*, No. 1:09-cv-413, 2010 WL 774678, at *3 (W.D. Mich. Mar. 1, 2010) ("The DOT is somewhat limited in that it classifies jobs in terms of skill and exertional (strength) demands. It does not address nonexertional limitations[.]"). Thus, the Court finds that *Young* is inapplicable to the facts of this case.

economy." *Ellis v. Astrue*, No. 3:11-CV-535, 2012 WL 5304203, at *5 (E.D. Tenn. Oct. 4, 2012), *adopted by* No. 3:11-CV-535, 2012 WL 530420, at *1 (E.D. Tenn. Oct. 25, 2012) (citing *Studaway v. Sec'y of Health and Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987)). However, the "the Commissioner's decision must explain why the claimant can perform the demands and duties of the past job." *Scarborough v. Colvin*, No. 3:12-CV-10, 2013 WL 3423891, at *6 (E.D. Tenn. July 8, 2013) (quoting *D'Angelo v. Comm'r of Soc. Sec.*, 475 F.Supp.2d 716, 723–24 (W.D. Mich. 2007)); *see also* 20 C.F.R. § 404.1520(f) ("[W]e will compare your residual functional capacity . . . with the physical and mental demands of your past relevant work.").

The Court finds that section 922.687-058 of the DOT, as argued by the Commissioner, specifically states that climbing is performed on an occasional basis, *i.e.*, up to one-third of the time. U.S. Dep't of Labor, *Dictionary of Occupational Titles* § 922.687-058, 1991 WL 688132 (4th Ed. 1991). Thus, plaintiff is incorrect in asserting that the DOT does not show how much climbing is required.

Plaintiff further contends that the ALJ's reliance on the DOT was also erroneous because she did not properly consider plaintiff's own description of the job. To the extent that plaintiff argues that a claimant's testimony and statements regarding how her past work was performed is the only evidence an ALJ may rely on in determining whether a job performed by a claimant constitutes past relevant work, the Court disagrees. To be sure, the Act's implementing rules and regulations provide several possible ways for determining whether a claimant retains the capacity to perform his or

22

her past relevant work, including "[w]hether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it" *or* "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy" as described by the DOT. Soc. Sec. Rul. 82-61, 1982 WL 31387, at *1–2 (1982); *see* 20 C.F.R. § 404.1560(b)(2). Thus, the ALJ's reliance on the DOT's description of a store laborer was not only proper, but it provided substantial evidence to support the ALJ's finding that plaintiff could perform her past relevant work.

Accordingly, plaintiff's allegation of error in this regard is not well taken.

### E.      Credibility Finding

Finally, plaintiff argues that the ALJ failed to adequately evaluate her credibility pursuant to Social Security Ruling 96-7p [Doc. 18 at 8]. Plaintiff alleges that the ALJ did not comply with the ruling because she merely recited what the criteria were for weighing plaintiff's credibility without stating the weight she gave to plaintiff's statements and the reasons for that weight [*Id.* at 9–10]. Instead, plaintiff argues, the ALJ made a conclusory statement concerning plaintiff's credibility [*Id.* at 10].

The Commissioner asserts that the ALJ properly evaluated plaintiff's credibility consistent with the ruling [Doc. 21 at 7]. Contrary to plaintiff's assertions, the Commissioner explains that the ALJ provided why she found plaintiff's statements were not fully credible and provided specific examples of how the record did not support, and in fact contradicted, such statements [*Id.* at 7–8].

23

In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant." *Walters*, 127 F.3d at 531. Our appellate court has articulated the standard for evaluating subjective complaints as follows:

> First, we examine whether there is objective medical evidence in an underlying medical condition. If there is, we then examine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan v. Sec. of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

In deciding whether the objective evidence confirms the severity of the alleged pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain, the ALJ must consider the following factors: (i) daily activities; (ii) the location, frequency, and intensity of the pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received or have received for relief of pain or other symptoms; (vi) any measures that are used or were used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3 (July 2, 1996); 20 C.F.R. § 1529(c)(3).

Although the ALJ is not required to address every factor, the ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2. Moreover, when supported by substantial evidence, the ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters, 127 F.3d at 531.

In pertinent part, the ALJ provided the following discussion regarding plaintiff's credibility:

> As for her impairments, the claimant stated that she has 1 to 2 migraine headaches per day and that she has neck, back, shoulder, and leg pain. The claimant also reported that she has asthma and that she uses an inhaler. As for activities of daily living, the claimant states that her children and husband perform most of the household chores.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. For example, while the claimant reported to Dr. Blaine that she had a pinched nerve in her cervical spine, there is no diagnostic testing in the record to support this allegation. In addition, during the consultative exam, the claimant was able to perform the heel walk, toe walk, tandem walk, one-leg stand, and squat without difficulty. The claimant also had normal grip and muscle strength at the consultative exam. (Exhibit

2F). Moreover, while the claimant testified that her husband and children perform the household chores, she reported she had no problems with motivation and that she enjoys cleaning and cooking. (Exhibit 13F at p. 27). The medical record of evidence also demonstrates that the claimant's migraine headaches improved with medication. (Exhibit 13F at p. 6). Based on the foregoing, the undersigned finds that the claimant's impairments are not as severe as she has alleged.

[Tr. 17].

The Court finds that the ALJ's discussion provides much more than a conclusory statement that she considered plaintiff's statements pursuant to Social Security Ruling 96-7p. In fact, the ALJ provided four specific reasons for discounting plaintiff's credibility: (1) there was no diagnostic imaging to support plaintiff's allegation of a pinched nerve; (2) plaintiff was able to perform a variety of functional tests during the consultative examination with Dr. Blaine; (3) plaintiff testified that her husband and children performed household chores which was contradicted by plaintiff's report that she enjoys cleaning and cooking; and (4) medical records document that plaintiff experienced improvement with medication in regard to her migraine headaches. Moreover, the ALJ included citation to the record to support each of her findings. Thus, the Court finds that the ALJ complied with her duty to give specific reasons, supported by substantial evidence, for finding that plaintiff was not fully credible.

Plaintiff also argues, however, that the ALJ failed to specify the weight she gave to plaintiff's statements and that it is unclear whether the ALJ found plaintiff's statements credible or not credible [Doc. 18 at 14]. The Court finds some merit in plaintiff's

contention.  In *Potter v. Colvin*, this Court previously explained that "template" language that "says that all the claimant's allegations are not credible to the extent they are more severe than the [residual functional capacity]" is "unhelpful" to a reviewing court.  No. 3:12-CV-202, 2013 WL 4857731, at *14 (E.D. Tenn. Sept. 11, 2013) (quotation omitted).  Such "template" language is used here almost verbatim.  However, also like *Potter*, the Court here finds that despite the boilerplate language, the ALJ "provided additional reasons for discounting plaintiff's credibility pursuant to 20 C.F.R. § 404.1529(c) and explained [her] opinion fully."  *See id.*

Accordingly, plaintiff's allegation of error in this respect is not well taken.

## VI.  CONCLUSION

Based upon the foregoing, Plaintiff's Motion for Judgment on the Administrative Record [Doc. 17] is **DENIED** and the Commissioner's Motion for Summary Judgment [Doc. 20] is **GRANTED**.

IT IS SO ORDERED.


s/ Thomas A. Varlan_____
CHIEF UNITED STATES DISTRICT JUDGE